IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Rico Velasco,<br><br>　　　　Defendant. | CR 06-00904-TUC-FRZ(JCG)<br><br>**REPORT AND RECOMMENDATION** |

    On March 28, 2008, the government filed a Petition to Revoke Supervised Release. (Doc. No. 43.) Defendant requested an evidentiary hearing during an initial appearance on July 15, 2008. (Doc. No. 45.) This matter came before the Court for a hearing and a report and recommendation as a result of a referral made on March 3, 2006, pursuant to LRCrim 5.1. (Doc. No. 4.)

    Defendant's Motion was set for evidentiary hearing and evidence was heard on August 22, 2008. (Doc. No. 52.) Defendant, who is presently in custody, was present and represented by counsel. This matter was submitted following oral argument at the conclusion of the hearing and taken under advisement.

    Having now considered the matter, the Magistrate Judge recommends that the District Court, after its independent review, GRANT the Petition to Revoke Supervised Release.

## FACTUAL FINDINGS

The government seeks to revoke Defendant's Supervised Release on the grounds that Defendant violated Standard Condition 1 of his Supervised Release: "You shall not commit another federal, state or local crime during the term of supervision." The government presented evidence, via the testimony of United States Probation Officer Kelly Cutright and Maricopa County Sheriff's Deputy C. Estle, that on November 12, 2007, Defendant was a passenger in a vehicle stopped by Deputy Estle.[1] During the stop, police dispatch reported that Defendant had a suspended driver's license. Defendant admitted to Deputy Estle that his license was suspended. Later that night, Deputy Estle observed Defendant driving. He followed Defendant and observed Defendant's failure to stop at a stop sign. Deputy Estle then signaled for Defendant to pull over. After stopping Defendant and confirming that Defendant was driving with a suspended license, Deputy Estle attempted to issue a criminal citation to Defendant. Defendant refused to sign and fingerprint the citation, prompting Deputy Estle to arrest him. Defendant was hostile and uncooperative to Deputy Estle during the arrest; another officer was required to assist Deputy Estle in loading Defendant into Deputy Estle's vehicle. Defendant made threatening remarks to Deputy Estle during transport to the Maricopa County jail.

At the jail, Deputy Estle attempted to remove Defendant's jewelry so that he could be booked into jail. Some of Defendant's bracelets could not be removed over his hands and Deputy Estle attempted to remove the bracelets using a metal cutting tool. Defendant grabbed Deputy Estle's hands, causing Deputy Estle to cut himself on the finger with the cutting tool. According to the Petition to Revoke Supervised Release, Defendant later pled guilty in Ironwood Justice Court to driving with a suspended license, for which he was sentenced to summary probation with a fine of $562.

---

[1] Probation Officer Cutright and Deputy Estle were the only witnesses to testify at the hearing.

The government alleges that during his November 12, 2007 arrest, Defendant violated Standard Condition 1 six times:

1. On or about November 12, 2007, Velasco committed the offense of aggravated assault in violation of A.R.S. § 13-1204.A.8 when he grabbed Deputy Estle's hands and caused a cut to Deputy Estle's finger;[2]

2. On or about November 12, 2007, Velasco committed the offense of threatening in violation of A.R.S. § 13-1202.A.1 when he threatened Deputy Estle during transport to Maricopa County jail;

3. On or about November 12, 2007, Velasco committed the offense of driving with a suspended license in violation of A.R.S. § 28-3473.A;

4. On or about November 12, 2007, Velasco committed the offense of driving without proof of insurance in violation of A.R.S. § 28-4135.C;

5. On or about November 12, 2007, Velasco committed the offense of failure to stop at a stop sign in violation of A.R.S. § 28-855.B; and

6. On or about November 12, 2007, Velasco committed the offense of white light to the rear in violation of A.R.S. § 28-925.A.

## LEGAL STANDARD

18 U.S.C. § 3583(e)(3) and Fed.R.Crim.P. 32.1(b) permit the Court to revoke a term of supervised release and impose a prison term in its stead based upon findings made by a preponderance of the evidence rather than beyond a reasonable doubt.

## ANALYSIS

**1. Defendant violated a condition of supervised release when he committed the offense of aggravated assault in violation of A.R.S. § 13-1204.A.8.**

The government met its burden of proof in demonstrating that Defendant assaulted Deputy Estle. A.R.S. § 13-120e defines assault as "intentionally, knowingly or recklessly causing any physical injury to another person." Deputy Estle testified that he was required to remove all of Defendant's jewelry prior to booking Defendant into jail. Defendant's

---

[2] The Petition to Revoke Supervised Release alleged that Defendant violated A.R.S. § 13-1204.A.2 (assault using a deadly weapon or instrument). At the evidentiary hearing, the government moved to amend the Petition to instead allege a violation of A.R.S. § 13-1204.A.8 (assault on a peace officer). The Court granted the motion to amend after asking the Defendant whether he wanted a continuance to respond to the amended allegation.

1 bracelets could not be removed over his hands. Deputy Estle testified that he did not ask
2 Defendant to attempt to remove the bracelets himself, because doing so would have required
3 removal of Defendant's handcuffs, which Deputy Estle did not think was safe given
4 Defendant's hostile behavior. Deputy Estle attempted to remove Defendant's bracelets using
5 a metal cutting tool. Deputy Estle testified:

6     Govt. counsel:     "Did you advise him that that's [remove the bracelets with a
7                               cutting tool] what you were going to do?"

8     Deputy Estle:     "Yes I did."

9     Govt. counsel:     "And how did he respond to that?"

10     Deputy Estle:     "I don't remember him responding negatively to me telling him
11                               that I was going to remove those."

12     Govt counsel:     "Ok."

13     Deputy Estle:     "And I proceeded to attempt to do so."

14 Deputy Estle asked Defendant to raise his hands, which were handcuffed behind
15 Defendant's back. When Deputy Estle approached Defendant with the metal cutting tool,
16 Defendant grabbed Deputy Estle's hands and in the ensuing struggle, Deputy Estle's finger
17 was cut by the metal cutting tool. Deputy Estle's testimony establishes that Defendant
18 grabbed Deputy Estle when he knew that Deputy Estle held a cutting tool in his hands.
19 Deputy Estle sustained an injury as a result of Defendant's reckless conduct.

20 Defendant argued that the government had failed to meet its burden of proof because
21 Deputy Estle testified on cross-examination that he never told Defendant that he had a cutting
22 tool in his hands. According to Defendant, his conduct cannot be viewed as reckless because
23 he did not know that Deputy Estle was using a cutting tool to cut his bracelets and he could
24 not have foreseen any risk of harm to Deputy Estle caused by Defendant grabbing his hands.
25 If Defendant did not know Deputy Estle was attempting to cut off the bracelets the Court
26 would agree, but the testimony cited by Defendant does not support this conclusion because
27 Deputy Estle never clearly stated that the Defendant did not know what Estle was attempting
28 to do.

1    Defense counsel asked Deputy Estle a compound question – "did you ask him to
2 remove the bracelets or tell him that you were going to cut off the bracelets?"– but Deputy
3 Estle answered before defense counsel had finished asking the two-part question.  Deputy
4 Estle's cross examination was as follows:

5    Defense counsel: "And I think you said that you didn't ask him to remove, you
6        didn't tell him that ..."
7    Deputy Estle: "That's correct."
8    Defense counsel: " ... you were going to cut off the bracelets.  And it sounds like he
9        was handcuffed to the back."

10 The testimony is most logically read as Deputy Estle answering "correct" to the leading
11 statement "you said that you didn't ask him to remove [the bracelets]," and not providing an
12 answer to the question "did you tell him you were going to cut off the bracelets?"  This
13 interpretation is supported by the fact that Deputy Estle clearly testified on direct
14 examination that he advised Defendant that he was going to remove the bracelets using a
15 cutting tool.  Accordingly, the Court rejects Defendant's argument that the government failed
16 to prove assault under Arizona law.

17 **2.    Defendant violated a condition of supervised release when he committed the offense of threatening in violation of A.R.S. § 13-1202.A.**
18

19    The government demonstrated by a preponderance of the evidence that Defendant
20 committed the offense of threatening in violation of A.R.S. § 13-1202.A.  The statute is
21 violated if a person "threatens or intimidates by word or conduct to cause physical injury to
22 another person or serious damage to the property of another."  The test for determining
23 whether the conduct or statement at issue in prosecution constitutes threatening or
24 intimidating is whether a reasonable person would foresee that the statement would be
25 interpreted by those to whom defendant communicates the statement as a serious expression
26 of an intention to inflict bodily harm upon or to take the life of a person.  *See In Re Ryan A*,
27 202 Ariz. 19, 29 P.3d 543 (App. 2002).  Deputy Estle testified that during transport to the
28 Maricopa County jail, Defendant threatened Deputy Estle by stating that he and/or his friends

1  would come after Deputy Estle the next time he was on duty in Gila Bend and by saying that
2  he and/or his friends would follow Deputy Estle home and hurt him and his family. A
3  reasonable person would foresee that such statements would be considered a serious
4  expression of an intent to harm. In fact, Deputy Estle testified that he considered them as
5  such.

6  **3.   Defendant violated a condition of supervised release when he committed the offense of driving with a suspended license in violation of A.R.S. § 28-3473.A.**
7

8  The government proved by a preponderance of the evidence that Defendant committed
9  a state crime when he drove with a suspended license. A violation of A.R.S. § 28-3473.A
10 is a criminal misdemeanor. Deputy Estle testified that police dispatch reported Defendant's
11 license as suspended and that Defendant admitted that his license was suspended. Defendant
12 pled guilty in Ironwood Justice Court to driving with a suspended license.

13 **4.   The government did not prove by a preponderance of the evidence that Defendant committed the offense of driving without proof of insurance in violation of A.R.S. § 28-4135.C.**
14
15

16 The government did not present any evidence to support its allegation that Defendant
17 drove without proof of insurance on November 12, 2007. Furthermore, A.R.S. § 28-4135.C
18 imposes only civil penalties for driving without proof of insurance. A defendant cannot
19 "commit another state *crime* during the term of supervision" within the meaning of Standard
20 Condition 1 by violating A.R.S. § 28-4135.C.

21 **5.   Defendant did not violate a condition of supervised release when he committed the offense of failure to stop at a stop sign in violation of A.R.S. § 28-855.B.**

22
23 Deputy Estle testified that he observed Defendant failing to stop at a stop sign on
24 November 12, 2007. However, A.R.S. § 28-855.B imposes only civil penalties for failure
25 to stop at a stop sign. Thus, Defendant's failure to stop at a stop sign was not a "state crime"
26 as contemplated by Standard Condition 1 of his Conditions of Supervised Release.

27
28

**6.     The government did not prove by a preponderance of the evidence that Defendant committed the offense of white light to the rear in violation of A.R.S. § 28-925.A.**

The government did not present any evidence supporting its allegation that Defendant drove a vehicle with broken, *ie.* "white," tail-light. In addition, A.R.S. § 28-925.A imposes only civil penalties for driving with a white light to the rear. Thus, a violation of A.R.S. § 28-925.A is not a "state crime" as contemplated by Standard Condition 1.

### RECOMMENDATION

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court accept the Magistrate's findings that the Defendant violated allegations 1, 2 and 3 as outlined in the Petition to Revoke Supervised Release. (Doc. No. 43.) The parties have ten (10) days to serve and file written objections to the Report and Recommendation. The parties are advised that any objections should be filed with the following caption: **CR 06-904-001-TUC-FRZ.**

The Disposition hearing in this matter is scheduled for September 22, 2008, at 8:40 a.m. before the Honorable Frank R. Zapata.

DATED this 27th day of August, 2008.

Jennifer C. Guerin
United States Magistrate Judge